## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

LOCKTON COMPANIES, LLC –  )
PACIFIC SERIES, LOCKTON  )
INVESTMENT ADVISORS, LLC, and  )
LOCKTON INVESTMENT SECURITIES,  )
LLC f/k/a LOCKTON FINANCIAL  )
ADVISORS, LLC,  )  Case No. 4:22-cv-462
   )
        Plaintiffs,  )
   )  JURY TRIAL REQUESTED
   vs.  )
   )
ERIC D. KAUFMAN,  )
   )
        Defendant.  )

## COMPLAINT

Plaintiffs Lockton Companies, LLC – Pacific Series (the "Series"), Lockton Investment Advisors, LLC ("LIA"), and Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC ("LIS") (the Series, LIA, and LIS collectively referred to herein as "Plaintiffs" or "Lockton"), by and through their attorneys, for their complaint against Defendant Eric D. Kaufman ("Kaufman" or "Defendant"), hereby allege, with knowledge as to themselves and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     Plaintiffs bring this action to enforce the contractual obligations of Producer Member Kaufman, including a thirty-day notice of termination requirement and non-disclosure and non-solicitation obligations, to enjoin Kaufman's ongoing violations of same, and to protect Plaintiffs' confidential information, trade secrets, and business relationships.

2.     Kaufman has been an owner and Producer Member of Lockton for over 15 years. During that time, he developed a significant book of business using Lockton's Confidential

Information, goodwill, and business development resources.

3.     Kaufman is not and never was an employee of Lockton. He is an owner and a member of Lockton, and has reaped the benefits of said ownership for over 15 years. Any claim by Kaufman to the contrary is merely a desperate attempt to avoid responsibility.

4.     Kaufman's position as owner and Producer Member of Lockton entitles him to broad access to Lockton's most sensitive competitive information and to Lockton's customer accounts and personnel. With this access comes unconditional fiduciary duties of loyalty and care that he owes Lockton.

5.     Kaufman is also subject to contractual restrictive covenants as a Producer Member. In exchange for valuable equity interests in Lockton, Kaufman became subject to member agreements containing provisions prohibiting the solicitation of Lockton colleagues and clients during his membership and for a two-year period following the termination of his membership. Kaufman also agreed that he would not disclose Lockton's Confidential Information (defined below), an obligation with no expiration date. Kaufman also agreed that he would only terminate his membership in Lockton upon thirty (30) days' written notice to Lockton.

6.     On July 18, 2022, Kaufman abruptly notified Lockton that he was terminating his membership, "effective immediately." Kaufman failed to provide 30 days' notice of his termination, as required by his agreements with Lockton. Kaufman also failed to disclose to Lockton that he had accepted an offer to join Lockton's competitor, Alliant Insurance Services, Inc. ("Alliant"). Lockton only learned of this the next day, July 19, 2022, when Alliant left a voice message on Kaufman's Lockton telephone suggesting that he planned to begin work for Alliant imminently. Today, Kaufman finally confirmed that he has already begun employment with Alliant—despite being a Producer Member of Lockton through August 17, 2022.

7.     In the hours and days following Kaufman's termination notice, Lockton repeatedly communicated to Kaufman that it was invoking the 30 days' notice requirement and continuing contractual obligations and fiduciary duties and requested that Kaufman confirm his intention to comply with the same, including by deferring his start date with Alliant. Kaufman ignored the communications, refused to provide the requested confirmations, reiterated through his counsel that Kaufman deems his termination effective immediately, suggested that he is not subject to continuing contractual obligations and fiduciary duties to Lockton, and filed a declaratory judgment action in California seeking to invalidate his contractual obligations in violation of the Missouri choice of law and forum clause in his agreements with Lockton. Lockton also communicated with Alliant, informing Alliant of Kaufman's notice period and other restrictions, but Alliant likewise ignored Lockton's requests for deferral of Kaufman's start date with Alliant and assurance that he would abide by his ongoing restrictions.

8.     Kaufman has blatantly violated his contractual and fiduciary duties to Lockton by attempting to effectuate the early termination of his membership in Lockton and starting work for Alliant while still a Lockton Producer Member. In addition, on information and belief, Kaufman has misappropriated Lockton Confidential Information for use at Alliant with the intent to solicit, or attempt to solicit, Lockton colleagues and customers. Indeed, shortly before resigning, Kaufman sent himself, to his personal email account, at least one Lockton customer list, and despite conceding in his termination notice that he retains other Lockton documents, to date, he has not returned them. Lockton's investigation of Kaufman is ongoing and is likely to uncover additional misconduct.

9.     Lockton seeks temporary, preliminary, and permanent injunctive relief prohibiting Kaufman from (i) terminating his membership in Lockton before the expiration of the 30 days'

notice period and working for Alliant, or another competitor, during that period; (ii) wrongfully soliciting, recruiting, or hiring Producer Members and associates/employees of Lockton, or from wrongfully aiding and/or abetting these activities, until August 17, 2024; (iii) soliciting, accepting, or servicing Lockton's restricted customer accounts, or from wrongfully aiding and/or abetting these activities, until August 17, 2024; (iv) wrongfully disclosing, using, or taking Lockton's Confidential Information and trade secrets, including, but not limited to, information about Lockton's customer accounts, or from wrongfully aiding and/or abetting these activities; and (iv) interfering with Lockton's contracts and business expectancies, as further alleged herein. Lockton also seeks a declaration of the parties' rights and obligations under their agreements, and seeks to recover damages for those quantifiable injuries that Lockton has suffered to date.

## THE PARTIES

10. The Series is a series of Lockton Companies, LLC, (the "Company") a Missouri series limited liability company organized under the Missouri Limited Liability Company Act, Mo. Rev. Stat. §§ 347.010, *et seq.*, specifically Mo. Rev. Stat. § 347.186. The Series operates brokerage offices and transacts business in California (Irvine, Los Angeles, Sacramento, San Diego, San Francisco, San Jose and Sonoma), Washington, and Oregon, among other locations.

11. LIA is a Missouri Limited Liability Company organized and operated under the laws of the State of Missouri. LIA operates an investment advisory service for its clients across the United States.

12. LIS is a Missouri Limited Liability Company organized and operating under the laws of the State of Missouri. LIS operates Lockton's broker-dealer business.

13. Kaufman, a citizen and resident of California, is a commercial insurance brokerage professional and an owner and Producer Member of the Series, LIA, and LIS. He has been an

4

owner and Producer Member of Lockton since 2007. He specializes in retirement and employee benefits, including health and welfare benefits, qualified and non-qualified retirement plans, executive benefits, and life insurance for business planning.

## JURISDICTION AND VENUE

14.    This action arises under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, as well as under Missouri law. The Court has subject-matter jurisdiction over Lockton's federal cause of action (Count IV) pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). The Court has supplemental jurisdiction over the remaining causes of action (Counts I-III, V) pursuant to 28 U.S.C. § 1367.

15.    By signing and accepting the terms of his Member Agreements, not to mention the benefits attendant thereto, Kaufman expressly agreed with Lockton that jurisdiction is proper in this Court and he is therefore subject to the Court's jurisdiction.[1] *See* Exhibit A, § 7.7(a); Exhibit B, § 7.7(a); Exhibit C, § 7.7(a). There is a reasonable basis for the parties' choice of forum given the negotiation of the Member Agreements in Missouri, Lockton's substantial contacts with Missouri and the motivation to resolve disputes regarding the parties' rights and interests in the agreements on a uniform basis in accordance with Missouri's series limited liability company law. *See* Exhibit A, § 7.7(b); Exhibit B, § 7.7(b); Exhibit C, § 7.7(b). Additionally, the Series, LIA, and LIS, and thus Kaufman as a Producer Member of each, receives administrative, regulatory/compliance, and customer-related support and information from Missouri, and utilizes

---

[1] A true and accurate copy of Kaufman's Member Agreement for the Pacific Series of Lockton Companies, LLC and each of its amendments (the "Series Member Agreement") is attached hereto as **Exhibit A** and incorporated herein by reference. A true and accurate copy of Kaufman's Member Agreement for Lockton Investment Advisors, LLC and each of its amendments (the "LIA Member Agreement") is attached hereto as **Exhibit B** and incorporated herein by reference. A true and accurate copy of Kaufman's Member Agreement for Lockton Investment Securities, LLC f/k/a Lockton Financial Advisors, LLC and each of its amendments (the "LIS Member Agreement") is attached hereto as **Exhibit C** and incorporated herein by reference. The Series Member Agreement, LIA Member Agreement, and LIS Member Agreement are collectively referred to herein as the "Member Agreements."

computer servers located in Missouri.

16. Venue is proper in this Court because Kaufman expressly agreed in writing that any action relating to his respective written agreements with Lockton must be brought exclusively in either state court in Jackson County, Missouri or in federal court. *See* Exhibit A, § 7.7(a); Exhibit B, § 7.7(b); Exhibit C, § 7.7(b). Venue is also proper as to Lockton's claims against Kaufman because Lockton's contract-based claims against Kaufman arise out of the same nucleus of operative facts as Lockton's other claims against Kaufman. Therefore, judicial economy, fairness, and convenience require the claims be heard in one proceeding before this Court.

## FACTUAL ALLEGATIONS

### I. THE SERIES

16. The Series, along with the other series of the Company and their affiliates, makes up one of the world's preeminent insurance brokerage firms, offering insurance, risk management, employee benefits, and retirement services, across a number of economic sectors, including the real estate and construction, technology, telecommunications, healthcare, and financial services sectors. The Series and its affiliates operate globally, through a number of affiliates.

17. On May 1, 2016, the Company reorganized with the approval of the Series Producer Members, including Kaufman. Each Producer Member of the Series entered into an individual member agreement with the Series and thereby agreed, along with all Producer Members of the Other Series, to be bound by the "Second Amended and Restated Operating Agreement of Lockton Companies, LLC and Each of its Series," dated May 1, 2016, which applies to the Company, all of its series, and all Producer Members.

18. On January 1, 2018, the Company amended and restated its operating agreement to clarify minor ambiguities by executing the Third Amended and Restated Operating Agreement of

Lockton Companies, LLC and Each of its Series (the "Series Operating Agreement"). Due to the nature of the amendment, approval of each Series Producer Member was not required. Each Producer Member of the Series, along with all Producer Members of the Other Series, are bound by the Series Operating Agreement, which applies to the Company, all of its series, and all Producer Members.

19.     The Producer Members of the Series each hold an ownership interest in the Series. Specifically, each Producer Member of each series makes a Capital Contribution (as defined in the Member Agreement) to and thereby purchases and owns one (1) Producer Unit of the respective series with which he or she is affiliated, which confers and represents the Producer Member's equity ownership interest and his/her respective series with which he or she is affiliated, and and entitles the Producer Member to receive, among other benefits of ownership, producer profit return (profit distribution) from his or her series and a Buy-Sell Price upon termination of his/her membership.

20.     In addition to its organization as a Missouri series limited liability company, the Series has numerous connections to Missouri in its day-to-day operations. The Series has many associates/employees and Producer Members who are licensed as insurance brokers in the State of Missouri. The Series and its Producer Members also pay entity and individual taxes and licensing fees to the State of Missouri.

## II.    LIA

21.     LIA operates an investment advisory service for its clients across the United States. In December 2021, LIA transferred certain of its assets to a third party pursuant to an asset purchase agreement. As part of that asset transfer, LIA Producer Members that opted to remain Producer Members of LIA were eligible to participate in the asset transfer and share in the

proceeds, subject to enhancements to their then-current non-solicitation obligations to LIA.

22.     As part of the asset transfer, each remaining LIA Producer Member (including Kaufman) voted to approve the Fourth Amended and Restated Operating Agreement of Lockton Investment Advisors, LLC (the "LIA Operating Agreement" together with the Series Operating Agreement hereinafter referred to as the "Operating Agreements") and assented to the enhanced non-solicitation obligations documented in a written Solicitation agreement.

### III.     LIS

23.     LIS operates Lockton's broker-dealer business.

### IV.     PRODUCER MEMBER KAUFMAN

24.     Kaufman is a commercial insurance brokerage professional and an owner Producer Member of Lockton. *See* Exhibit A; Exhibit B; Exhibit C.

25.     In addition to his status as a Producer Member of Lockton, Kaufman serves as a Senior Vice President of the Series. *See* Exhibit A.

26.     At all times during Kaufman's association with Lockton, since 2007, he has been and remains, a sophisticated businessman with extensive experience in the business world, including, among other things, more than twenty (20) years of experience and specialized training in the commercial insurance brokerage industry.

27.     By virtue of his longstanding relationship with Lockton, Kaufman has developed a significant book of business. He is responsible for strengthening and developing new Customer Accounts[2] as well as servicing existing Customer Accounts. He is also entrusted to maintain

---

[2]   As defined by the Series Member Agreement, "Customer Accounts" means "the accounts of all customers of one or more of the [Pacific] Series, the Other Series, or any Affiliate" as well as "prospective customers of either one or more of the [Pacific] Series, the Other Series or any Affiliate," subject to certain conditions. *See* Exhibit A, § 4.1(c)(1)-(2). The LIA Member Agreement and LIS Member Agreement each contain a nearly identical definition. *See* Exhibit B, § 4.1(c)(1)-(2); Exhibit C, § 4.1(c)(1)-(2).

significant and long-term relationships with customers' key decision-makers who possess the authority to choose, and switch, brokerage firms. Kaufman has also developed close relationships with various other Producer Members, as well as with Lockton's employees.

28.    Over the last fifteen years, Lockton has invested significantly in client service teams and the resources used by Kaufman to service Customer Accounts.

29.    Kaufman has access to important Confidential Information [3] about Lockton's customers, including, without limitation, the customers' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such customers. This information has independent economic value, is not generally available to competitors, and is protected by Plaintiffs as a trade secret.

30.    Kaufman's access to Lockton's trade secrets and other Confidential Information well positions him to subvert Lockton's interests, engage in unfair competition, and convince customers to move their business away from Lockton and colleagues to leave Lockton.

## V.    KAUFMAN'S AGREEMENTS WITH PLAINTIFFS

### A.    <u>The Series Member Agreement</u>

31.    Kaufman is a party to the Series Member Agreement.

---

[3]    As defined by the Serie Member Agreements, "Confidential Information" "includes, without limitation, trade secrets, non-public proprietary information, formulas, patterns, compilations, programs, devices, methods, techniques, or processes; sales and other business methods or policies; prices or price formulas; procedures; the identity of and information concerning former or current Customer Accounts of the [Pacific] Series, the Other Series and/or any Affiliate, including but not limited to Customer Account needs and preferences, levels of satisfaction and the terms of engagement and transactions between the [Pacific] Series, the Other Series or Affiliates and/or its or their Customer Accounts; revenues, expenses, budgeting, finances and other financial information; computer systems, programs and software . . .; business, marketing and development strategies and plans; [Pacific] Series; Other Series and Affiliate member and/or Lockton Entity personnel information, including without limitation, compensation and benefit information; internal operational information related to the structure of any of the Lockton Entities, including without limitation, the Operating Agreement . . . ." *See* Exhibit A, § 4.1(b); Exhibit B, § 4.1(b); Exhibit C, § 4.1(b).

32.     Section 4.3 of the Series Member Agreement explicitly prohibits Kaufman from disclosing or misusing the Series' Confidential Information. In pertinent part, that Section states:

> While Member is a Producer Member of the Series and at all times thereafter, and except with the prior written consent of the applicable Lockton Entity or as is reasonably necessary for Member to perform Member's responsibilities as a Producer Member of the Series, ***Member shall not, directly or indirectly, (a) disclose, or attempt to disclose, Confidential Information to anyone other than the members, officers, or authorized employees, attorneys or other agents and fiduciaries of the applicable Lockton Entity, (b) use, or attempt to use, Confidential Information for any unauthorized purpose, or (c) acquire, access, duplicate, copy, remove, download, upload, save, email, transmit or otherwise take, or attempt to do any of the foregoing with respect to, Confidential Information for any unauthorized purpose***.[4]

33.     Section 5.3 of the Series Member Agreement prohibits Kaufman from soliciting "Producer Members, [e]mployees, and [o]thers" during his membership with the Series and for a period of two years after. In pertinent part, that Section states:

> ***Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit, recruit, hire, induce, persuade or encourage, or attempt to solicit, recruit, hire, induce, persuade or encourage, any employee, member, or consultant of Series or any Other Series, or Affiliate*** (if, with respect to a consultant, substantially all of the services performed by such consultant are on behalf of the Series or the Other Series or Affiliate) to terminate his/its employment, membership, or consultant relationship with, or to render services for any competitor of Series, or any Other Series or Affiliate, as applicable, and shall not otherwise take any action to interfere with, or attempt to interfere with, any employee's, member's or consultant's relationship with Series, or any Other Series or Affiliate, as applicable.[5]

34.     Section 5.4 of the Series Member Agreement explicitly prohibits Kaufman from soliciting certain Series' customers during his membership with the Series and for a period of two years after. In pertinent part, the Member Agreement states:

> ***Member shall not, directly or indirectly, for himself or on behalf of any other Person, solicit, induce, persuade or encourage, or attempt to solicit, induce, persuade or encourage any of the Customer Accounts described below, if any such Customer Account qualified as a Customer Account within the six (6) month period immediately preceding the sale of Member's Producer Unit, to***

---

[4]  Exhibit A, § 4.3 (emphasis added).
[5]  *Id.* § 5.3 (emphasis added).

*reduce, terminate, or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series*, the Other Series, or any Affiliate. Member shall not, directly or indirectly, for himself or on behalf of any other Person, (i) accept, service, or work on, or attempt or threaten to accept, service or work on, any such competitive business from any of the Customer Accounts that Member may not solicit, or (ii) in any way do business with any of the Customer Accounts that Member may not solicit to the extent such business is the same or substantially similar to that provided by the Series, the Other Series or any Affiliate. The Customer Accounts to which this restriction applies are:

    (1)    any of the Customer Accounts the Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and, . . .

    (3)    any of the Customer Accounts of the Other Series (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact; and, . . .

    (5)    any of the Customer Accounts of any Affiliate (A) produced by Member, (B) solicited by Member (in the case of prospective Customer Accounts), (C) serviced by Member, (D) for or about which Member acquired or had access to Confidential Information, or (E) with which Member has or had business contact.[6]

35.    Kaufman also agreed that the above provisions of the Series Member Agreement are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of the Series, and, as applicable, the Other Series, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts, employees, Producer Members, and consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability;

---

[6] Exhibit A, § 5.4(a) (emphasis added).

and other interests described in Section 5.1 of the Series Member Agreement.[7]

36.     Kaufman further agreed that his breach of the above-discussed provisions of the Series Member Agreement "will result in irreparable harm and continuing damage to the Series and, where applicable, any one or more Other Series, Affiliate, or other Lockton Entity" and entitles the Series to injunctive relief.[8]

37.     Kaufman agreed that Missouri law would govern the Series Member Agreement and that any related disputes would be resolved in Missouri courts. Specifically, the Series Member Agreement provides that: "This Agreement and all disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series … shall be subject to, governed by, and construed in accordance with the laws of the State of Missouri without reference to choice of laws, irrespective of the fact that one or both of the parties now is or may become a resident of a different state."[9]  It further provides that: "Any action involving any disputes, claims or issues that in any way pertain to the interpretation, validity or enforceability of, or otherwise arise out of or relate to this Agreement, the Operating Agreement and/or Member's membership in the Series, including, without limitation, any disputes, claims or issues arising out of or relating to the rights and interests of the Other Series, Affiliates and Lockton Entities as set forth herein, shall be brought exclusively in any Federal Court in Kansas City, Missouri or in the Circuit Court of Jackson County, Missouri," "[s]uch courts shall have exclusive jurisdiction over these matters, and Member hereby agrees to be subject to the personal jurisdiction of such courts."[10]

---

[7]   *Id.* § 5.5.
[8]   *Id.* § 7.1.
[9]   *Id.* § 7.7(a).
[10]   *Id.*

**B.      The LIA Member Agreement and the Solicitation**

38.      Kaufman is also a party to the LIA Member Agreement, which contains nearly identical restrictions to the Series Member Agreement regarding the disclosure or misuse of LIA's Confidential Information,[11] and with respect to the non-solicit, non-servicing, and non-disclosure restrictions.[12]

39.      However, as part of the LIA asset transfer in December 2021, Kaufman received a sizable payment in return for conveying his portion of the LIA Customer Accounts to the third party purchaser.

40.      In return for the payment, and as part of the transaction, Kaufman executed a Solicitation agreement with LIA modifying the scope and time period of the non-solicitation obligations applicable to the Customer Accounts transferred to the third party. Specifically, the Solicitation provided that Section 5.4(b) of the LIA Member Agreement is amended and restated to prohibit Kaufman from soliciting certain Customer Accounts transferred to the third party for a period of two (2) years following the closing date of the asset transfer, with that two year period ending December 21, 2023.[13]

41.      Kaufman also agreed that the above-cited provisions of the LIA Member Agreement, as modified by the Solicitation, are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of LIA, and, as applicable, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill; relationships with Customer Accounts, employees, Producer Members, and

---

[11]  Exhibit B, § 4.3.
[12]  *Id.* § 5.3, 5.4.
[13]  A true and accurate copy of Kaufman's Solicitation is attached hereto as **Exhibit D** and incorporate herein by this reference.

consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability; and other interests described in Section 5.1 of the LIA Member Agreement.[14]

42.     Kaufman further agreed that his breach of the above-discussed provisions of the LIA Member Agreement, as modified by the Solicitation, "will result in irreparable harm and continuing damage to [LIA] and, if applicable, the Affiliate, and/or other Lockton Entity" and entitles LIA to injunctive relief.[15]

43.     Kaufman agreed that Missouri law would govern the LIA Member Agreement and that any related disputes would be resolved in Missouri courts. The LIA Member Agreement contains a governing law and forum selection clause nearly identical to the one set forth in the Series Member Agreement, quoted supra.[16]

### C.     The LIS Member Agreement

44.     Kaufman is also a party to the LIS Member Agreement, which contains nearly identical restrictions to the Series Member Agreement regarding the disclosure or misuse of LIS's Confidential Information,[17] and with respect to the non-solicit, non-servicing, and non-disclosure restrictions.[18]

45.     Kaufman also agreed that the above-cited provisions of the LIS Member Agreement, are no greater than necessary to achieve their aim and are reasonably necessary for the protection of the Confidential Information, goodwill, and other legitimate protectable business interests of LIS, and, as applicable, the Affiliates, and Lockton Entities, whose legitimate protectable business interests include, without limitation, customer contacts and goodwill;

---

[14]  Exhibit B § 5.1.
[15]  *Id.* § 7.1.
[16]  *Id.* § 7.7(a).
[17]  Exhibit C, § 4.3.
[18]  *Id.* § 5.3, 5.4.

relationships with Customer Accounts, employees, Producer Members, and consultants; maintaining the confidentiality of Confidential Information; ownership and workforce stability; and other interests described in Section 5.1 of the LIS Member Agreement.[19]

46.     Kaufman agreed that Missouri law would govern the LIS Member Agreement and that any related disputes would be resolved in Missouri courts. The LIS Member Agreement contains a governing law and forum selection clause nearly identical to the ones set forth in the Series Member Agreement, quoted supra, and the LIA Member Agreement.[20]

### D.     The Operating Agreements

47.     Kaufman is also bound by the Series Operating Agreement, the LIA Operating Agreement, and the Fourth Amended and Restated Operating Agreement of Lockton Investment Securities, LLC (the "LIS Operating Agreement" together with the Series Operating Agreement and LIA Operating Agreement hereinafter referred to as the "Operating Agreements").

48.     Among other things, Kaufman is subject to the termination provisions contained in the Operating Agreements, which provide the only methods upon which a Producer Member can terminate his membership. The Operating Agreements provide the following voluntary termination provision by members:

Any Producer Member may be terminated as a Member:

(a) by such Series Member on thirty (30) days' written notice to the Series;
. . . .

Series Operating Agreement, § 5.10(a); LIA Operating Agreement, § 5.10(a) and LIS Operating Agreement, § 5.10(a) (containing nearly identical language).

49.     The purpose of the 30 days' notice requirement is to facilitate a smooth transition

---

[19]   *Id.* § 5.1.
[20]   *Id.* § 7.7(a).

of services for the benefit of Lockton upon a Producer Member's departure, to protect Lockton's Confidential Information and relationships with customers and personnel, and to prevent a coordinated effort of Producer Members to resign immediately, affiliate with a competitor of Lockton, solicit additional employees to also resign, and immediately begin soliciting clients of Lockton.

50. The Operating Agreements acknowledge that Kaufman is subject to the non-disclosure, non-solicitation, and related obligations contained in the Member Agreements.[21]

51. Further, Section 5.5 of the Operating Agreements provides that Customer Accounts are the property of the respective series and that no Producer Member has any right, title, or interest in such Customer Accounts or in any records pertaining to such Customer Accounts.[22]

## VI. KAUFMAN'S RESIGNATION AND OFFENDING CONDUCT

### A. <u>Alliant's Raid History</u>

52. Alliant and Lockton both compete in the market for insurance brokerage and consulting services addressing a variety of industries and risks, including real estate and construction.

53. Lockton has an established reputation as a top global expert and industry leader in the commercial insurance brokerage business, including in California.

54. Through recent litigation between Alliant and Lockton stemming from Alliant's raid of another Lockton series' office, Alliant became well aware of the restrictive covenants contained in Lockton's agreements with its owner Producer Members. For example, in March 2019, Alliant targeted Lockton's Denver office, poaching more than 20 Producer Members and employees. Lockton sued, and by the date of the preliminary injunction hearing, Alliant had

---

[21] Operating Agreements, § 11.17.
[22] *Id.* § 5.5.

solicited at least 144 Lockton customers, and 50 customers had moved their business to Alliant.[23] Vice Chancellor Laster of the Delaware Chancery Court issued a comprehensive 57-page opinion finding that Alliant had "engineered" and "coordinate[d]" a sweeping raid against Lockton, induced Lockton employees to breach their contracts, and initiated a "full court press" to solicit Lockton's clients.[24] The Court found, among other things, that Alliant, with the assistance of its outside counsel, were responsible for "secretive and underhanded behavior in violation of contractual obligations and legal requirements" and for attempting to "mask their activities under a *façade of compliance measures* and through misleading representations and averments."[25] The court issued a preliminary injunction enjoining Alliant, along with its affiliated entities, from (i) soliciting or servicing the clients and prospects it targeted in the Lockton raid (including clients that had already been diverted to Alliant); and (ii) soliciting Lockton employees, members, or consultants to leave Lockton to work at Alliant.[26]

55.     Alliant knows that the Lockton agreements require Producer Members to provide 30 days' written notice of their termination to Lockton, and prohibit Producer Members, for a period of at least two years following the sale of their Producer Unit in the applicable Lockton series, from either directly or indirectly through third parties (i) soliciting, recruiting, or hiring "any employee, member, or consultants;" (ii) soliciting, servicing, or accepting certain Lockton customer accounts; and (iii) disclosing, using, or taking (or attempting to disclose, use, or take) any Confidential Information (as defined in the agreement) for any purpose.

56.     Notably, these non-solicitation and non-disclosure restrictions are essentially

---

[23] *See Mt. West Series of Lockton Cos., LLC v. Alliant Ins. Servs.,* No. 2019-0226-JTL, 2019 WL 2536104, at *8 (Del Ch. June 20, 2019).
[24] *Id.* at *1, *7.
[25] *Id.* at *22 (emphasis added).
[26]

identical to the ones that Alliant itself imposes on its employees and producer members in order to protect its relationships with customers, employees, and producer members and preserve its trade secrets and confidential information.

57.     Accordingly, when Alliant commenced its present attempts to recruit and hire Kaufman, Alliant had full knowledge that Kaufman was party to binding agreements with Lockton prohibiting his immediate transition to Alliant and was aware of the restrictive covenants to which he was bound. On information and belief, Alliant's efforts to solicit and hire Kaufman, and potentially others, to join their ranks are aimed at taking Lockton's customers, trade secrets, and other Confidential Information along with them. It is through this planned scheme, and not through legitimate competition, that Alliant apparently seeks to grow its West Coast insurance brokerage and retirement business and Lockton's ability to fairly compete for insurance brokerage and retirement engagements on the West Coast.

58.     This scheme is in keeping with Alliant's growth strategy of targeting producers with books of business and teams from competitors, otherwise known throughout Alliant as "leveraged hires," resulting in a string of lawsuits against Alliant for such corporate raids.[27]  This pattern of unscrupulous corporate raiding is so ingrained in Alliant's business model that in prior raids Alliant even prepared presentations for its Board of Directors analyzing the total revenue that

---

[27] *See, e.g.*, *Aon Risk Servs. Cos. v. Alliant Ins. Servs, et al,* No. 1:21-cv-06870 (N.D. Ill. 2021); *Partners Group, LTD. vs Michael Bonville, et al.,* No. 20CV34115 (Or. Multnomah County Cir. Ct. 2021); *Willis Towers Watson Southeast, Inc. v. Alliant Insurance Services, Inc. et al,* No. 3:21-cv-00417 (W.D.N.C. 2021); *Aon Risk Services Companies, Inc. et al v. Alliant Insurance Services, Inc. et al,* No. 1:19-cv-07312 (N.D. Ill 2020); *Arthur J. Gallagher & Co. v. Alliant Insurance Services, Inc. and Stone Point Capital, LLC,* No. 2020-0780-JTL (Del. Ch. 2020); *Mt. West Series of Lockton Cos., LLC v. Alliant Ins. Servs.,* No. 2019-0226-JTL (Del. Ch. 2020); *Willis Towers Watson PLC v. Noonan,* No. 1:18-cv-06587 (S.D.N.Y. 2018); *Willis Ins. Servs. of Ga. v. Alliant Ins. Servs.,* No. 8:18-cv-01826 (M.D. Fla. 2018); *Corporate Synergies Group, LLC v. Andrews,* No. 2:18-cv-13381 (D.N.J. 2018); *NFP Corp. and Maschino, Hudelson & Associates, L.L.C. v. Alliant Insurance Services, Inc., et al,* No. 2018-0688-AGB  (Del. Ch. 2018*); Cook Maran & Assocs., Inc., v. Scrocca,* No. C¬209-17 (N.J. Sup. Ct. 2017); *Wells Fargo Ins. Servs. v. Alliant Ins. Servs.,* 2017-0540-JTL (Del Ch. 2017); *Hays Group, Inc. v. Peters,* No. 16-cv-02352 (D. Minn. 2016); *Aon PLC v. Heffernan,* No. 1:16-cv-1924 (N.D. Ill. 2016); *Regions Ins. Inc. v. Alliant Ins. Servs.,* No. 3:13-cv-00667 (S.D. Miss. 2013); *Aon Risk Servs., N.E. v. Cusack,* 34 Misc. 3d 1205(A) (N.Y. Sup. Ct. Dec. 20, 2011).

Alliant expected to realize from the raids against the anticipated legal and settlement costs.[28]

B. **Kaufman's Premature Termination**

59.    On the evening of July 18, 2022, Kaufman sent a termination notice by email to Plaintiffs indicating that he intended to "withdraw and terminate [his] status as a member . . . effective immediately."

60.    The termination notice intentionally failed to mention or honor the 30 days' notice requirement in the Operating Agreements and gave no indication that Kaufman was headed to Alliant, Lockton's competitor.

61.    Within hours of Lockton's receipt of Kaufman's resignation notice, Lockton sent Kaufman by text message and email reminders of the 30 days' notice requirement in the Operating Agreements and the restrictive covenants contained in the Member Agreements. Lockton requested that Kaufman confirm receipt of the messages and acknowledge his intent to comply with the 30 days' notice obligation and the restrictive covenants.[29]

62.    Since Kaufman had not responded, the following day, Lockton sent Kaufman a formal letter via email and FedEx documenting the 30 days' notice requirement, which expires on August 17, 2022, and again reminding him of the other continued fiduciary and contractual duties that he owes to Lockton by way of the Member Agreements.

63.    Later in the day on July 19, 2022, Lockton learned that Kaufman planned to join Alliant. Alyxx Iannetta, Assistant Vice President & Operations Assistant at Alliant left a voicemail for Kaufman on his Lockton business telephone number, alerting him that they had met previously in Alliant's LA Office during a visit, and that he would be receiving his Alliant equipment,

---

[28]  *Cusack*, 34 Misc. 3d 1205(A), at \*5–6 (describing cost-benefit analysis spreadsheet attached to a memo from Alliant's COO to its Board of Directors in 2011).

[29]  A true and correct copy of Plaintiffs' email communication is attached hereto as **Exhibit E** and incorporated herein by reference.

including a laptop and cell phone, at his home address the next day, on July 20, 2022. Kaufman had not informed Lockton of his plans.

64.     On the evening of July 19, 2022, Kaufman, through his counsel, acknowledged receipt of Lockton's July 19, 2022 letter, but claimed that because Kaufman worked and lived in California, that he "is entitled to the protections of California law" and "workplace mobility." Kaufman denied applicability of the 30 days' notice requirement, stating the "purported requirement that Mr. Kaufman provide Lockton with thirty (30) days' advance notice of his department from Lockton violates Section 16600 and California's longstanding public policy in favor of workplace mobility," and that "[i]n accordance with California law and public policy, yesterday, July 18 was Mr. Kaufman's last day with Lockton, not August 17 as stated in your July 18 email to Mr. Kaufman."

65.     That same evening, Lockton promptly responded to the letter correcting Kaufman's serious misstatements regarding the nature of Kaufman's relationship with Lockton (*i.e.*, that he is an owner and Producer Member and not an employee), the applicability of Missouri and not California law as agreed to in the Member Agreements, and the enforceability of Kaufman's notice requirement and continuing obligations to Lockton. Lockton further reminded Kaufman that he is still a Producer Member of Lockton and as such, owes fiduciary duties to Lockton that would be violated by his immediate association with Alliant.

66.     In response, Kaufman, through his counsel, on July 20, 2022 confirmed that Kaufman "has commenced employment with Alliant" and that he will "comply with his lawful obligations to Lockton in accordance with California law," not Missouri law as is applicable here.

67.     In addition to its communications with Kaufman and his counsel, Lockton has also put Alliant on notice that Kaufman remains a Producer Member of Lockton through August 17,

2022 with continuing obligations to Lockton. On July 19, 2022, Lockton reminded Alliant of Kaufman's contractual and fiduciary obligations to Lockton and specifically requested that Alliant honor the 30 days' notice requirement applicable to Kaufman through a delay of his start date with Alliant through at least August 17, 2022.

68.     Alliant confirmed on the morning of July 20, 2022 that it "respectfully disagrees with Lockton's assertions that Eric Kaufman remains a Producer Member of Lockton entities until August 17, 2022, and that Mr. Kaufman may not commence employment at Alliant until that date."

69.     On July 20, 2022, Lockton received notice that Kaufman filed a Complaint for Declaratory Judgment against Lockton in the Superior Court of the State of California for the County of Los Angeles, Central District. Kaufman acknowledges in the Complaint that he has begun employment with Alliant effective July 20, 2022, and that "[a]t Alliant, [Kaufman] will provide products and services that are the same or substantially similar to, or directly competitive with the products and services of Defendants . . . ." The Complaint seeks a declaration that Kaufman "may freely and fairly compete against [Lockton] . . . including by soliciting, accepting business from, servicing, working on, and doing business with his actual and prospective clients with which he worked during his affiliation with [Lockton]." The Complaint further seeks a declaration that the Missouri forum selection and choice of law provisions are void and unenforceable under California law and public policy.

70.     Upon information and belief, Alliant commenced its employment relationship with Kaufman on July 20, 2022 despite Lockton's request otherwise, and in direct contravention of the Operating Agreements and Member Agreements.

C.     **Kaufman's Misappropriation of Plaintiffs' Confidential Information and Improper Solicitation of Plaintiffs' Personnel and Customer Accounts**

71.     On information and belief, efforts by Kaufman to misappropriate Plaintiffs'

Confidential Information and trade secrets are also well underway. In Kaufman's July 18, 2022 resignation letter to Lockton, he admitted that he maintained hard copy documents and other "residual information," on his personal electronic devices. In Lockton's July 19, 2022 letter to Kaufman, Lockton demanded that Kaufman immediately return and surrender all Confidential Information, including any electronic devises that were used for business purposes, and provided notice of his duty to preserve all evidence related to his failure to comply with the Member Agreements and Operating Agreements. At the time of this filing, while Kaufman's counsel has offered to speak, Lockton has not received the hard copy documents that Kaufman acknowledged that he retains and Kaufman has failed to return Lockton's Confidential Information and trade secrets that he has already admitted he has retained on his personal electronic devices.

72.    Moreover, there is evidence that Kaufman misappropriated Plaintiffs' Confidential Information regarding customers and, on information and belief, is taking this information for use on behalf of Alliant. On May 20, 2022, and again on July 17, 2022, Kaufman sent his entire Outlook Contact list from his Series email account to his personal email address. The list contained the names and contact information (address, phone number and email) for most, if not all, of the Customer Accounts that he had worked with during his time with Plaintiffs. In an effort to hide his true intentions, and in order to transmit the client list under the radar, Kaufman named the contact list file "dodgerhome2020" so that it would not be readily identifiable to Plaintiffs as a client list.

73.    Weeks later, on June 20, 2022, Kaufman sent what appears to be a download of his Outlook Calendar, in spreadsheet form, to a second personal email address. Upon information and belief, the calendar spreadsheet documents all of his recent and prospective meetings with Customer Accounts and again includes contact information (primarily email addresses) for

Customer Accounts. In similar fashion, Kaufman named the calendar spreadsheet "dodgerhome2021" and he attached it to an innocuous forwarded email with the subject line: "FW: Members Only Days at Your Club: Super Sunday, June 26" with the intent to deceive Plaintiffs.

74. On information and belief, Kaufman has also violated, and is violating, his obligation to refrain from soliciting Plaintiffs' Producer Members or employees by surreptitiously soliciting Producer Members and employees to leave their membership and/or employment with Plaintiffs and work with him at Alliant. On information and belief, this improper solicitation resulted in the recent resignation of at least one of the Lockton employees closest to Kaufman.

75. On information and belief, Kaufman has no intention of honoring his obligation to refrain from soliciting or servicing Plaintiffs' customers by soliciting, directly or indirectly, Customer Accounts to move their business from Plaintiffs to Alliant. Indeed, one need only look to Kaufman's own assertions in his Complaint for Declaratory Judgment to understand that Kaufman never intended to honor his commitments to Lockton, despite benefitting from them generously over the years.

## VII.     IRREPARABLE HARM TO LOCKTON

76. If Kaufman is permitted to use the Lockton's trade secrets and Confidential Information to compete against Lockton, Lockton will be irreparably harmed.

77. Lockton has expended considerable time, effort, and resources developing and marketing their products and services and cultivating their relationships with Producer Members, employees, and consultants, as well as Customer Accounts and prospective customers.

78. Kaufman had and has access to valuable Confidential Information and trade secrets concerning Customer Accounts that he is obligated to use solely for the benefit of the Lockton or its affiliates.

79. Lockton has identified Producer Members, employees, and Customer Accounts potentially at risk of departure as a result of Kaufman's departure. Lockton reasonably expects that they may lose multiple colleagues, and numerous clients in the absence of injunctive relief.

80. With this action, Lockton seeks to enjoin Kaufman from further misappropriation of its valuable relationships with its customers, Producer Members, consultants, employees, and Confidential Information. Lockton also seeks to recover damages that it has suffered as a result of the unlawful conduct of Kaufman and those acting in concert with him.

**COUNT I**
**BREACH OF CONTRACT**
**(MEMBER AGREEMENTS AND OPERATING AGREEMENTS)**

81. Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

82. Lockton and Kaufman entered into valid contracts, the Member Agreements and Operating Agreements, for the purpose of describing the parties' relative rights and obligations with respect to Kaufman's membership in Lockton and post-membership conduct.

83. The Member Agreements and Operating Agreements were supported by mutual promises and valuable consideration.

84. Plaintiffs have complied with and performed all obligations under the Member Agreements and Operating Agreements.

85. The Operating Agreements require Kaufman to provide 30 days' written notice of the termination of his membership in Lockton.

86. The Member Agreements prohibit Kaufman from: (i) disclosing or misusing Plaintiffs Confidential Information; (ii) soliciting "Producer Members, [e]mployees, and [o]thers" during his membership with Plaintiffs and for a period of two years after; and (iii) soliciting, or

servicing or doing business with, certain Customer Accounts during his membership with the Series and for a period of two years after.[30]

87.     Kaufman has breached and continues to materially breach the express terms of the Operating Agreements and Member Agreements in the following manner:

(a)     Failing to provide 30 days' written notice of termination of his membership in the Series, LIA, and LIS;

(b)     Failing to return Plaintiffs' Confidential Information;

(c)     On information and belief, taking Plaintiffs' Confidential Information for use on behalf of Alliant;

(d)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, current Producer Members and associates/employees to leave their membership and/or employment with the Series and work with him at Alliant; and

(e)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Plaintiffs to Alliant.

88.     As a direct and proximate result of Kaufman's conduct in material breach of the Member Agreements and Operating Agreements, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

## COUNT II
## TORTIOUS INTERFERENCE WITH PLAINTIFFS' PROSPECTIVE ECONOMIC ADVANTAGE/PROSPECTIVE BUSINESS RELATIONSHIPS

89.     Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

90.     During all relevant times, Plaintiffs were continuously engaged in numerous

---

[30] As modified by the Solicitation.

discussions with current customers about potential future business opportunities. During all relevant times, Plaintiffs were also in active discussions with potential customers to solicit their business. Given Plaintiffs' time and effort with respect to this business development, as well as Plaintiffs' reputation in the industry, Plaintiffs were reasonably likely to secure these business opportunities.

91.     Upon information and belief, Kaufman, acting individually and/or in concert with Alliant and others, has, in a willful, wanton, or malicious manner, intentionally interfered with Plaintiffs' prospective business relationships by targeting and recruiting Plaintiffs' Customer Accounts and Producer Members and employees that Kaufman understood to be assisting with the development of these business relationships, and by aiding, inducing, and/or participating in the solicitation of Plaintiffs' Customer Accounts, Producer Members, and employees.

92.     Kaufman's intentional interference is the proximate cause of Plaintiffs suffering an enhanced risk of loss of customer and employee relationships that Plaintiffs spent significant time and energy developing. But for Kaufman's interference, Plaintiffs had a reasonable expectation of maintaining their existing relationships during the terms of non-solicitation provisions set forth in the relevant agreements with respect to their customers and personnel.

93.     As a direct and proximate result of Kaufman's intentional interference, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

**COUNT III**
**BREACH OF FIDUCIARY DUTIES AND/OR DUTIES OF LOYALTY**

94.     Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

95.     Pursuant to the Operating Agreements, Member Agreements, applicable Missouri law, and/or as an owner, officer, and Producer Member of Lockton, Kaufman owes fiduciary duties

and/or duties of loyalty to Lockton and has owed such duties at all times that he has been a Producer Member. Specifically, Kaufman agreed to, among other things, "devote full time and attention to the Business of [Lockton] . . . and do all things as may be reasonably directed by appropriate officers of [Lockton]." Operating Agreements § 5.3.

96.     Kaufman has breached his fiduciary duties and/or duties of loyalty owed to the Series and LIA in the following manner:

(a)     Engaging in negotiations with Alliant that created incentives for divided loyalty;

(b)     Failing to provide 30 days' written notice of termination of his membership in the Series, LIA and LIS and beginning work at Alliant, a competitor to Lockton, while still a Producer Member of Plaintiffs;

(c)     Concealing from Lockton that he had accepted an offer to join Alliant;

(d)     Failing to return Plaintiffs' Confidential Information;

(e)     On information and belief, taking Plaintiffs' Confidential Information for use on behalf of Alliant;

(f)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, current Producer Members and associates/employees to leave their membership and/or employment with the Series and work with him at Alliant; and

(g)     On information and belief, soliciting, or attempting to solicit, directly or indirectly, Customer Accounts to move their business from Plaintiffs to Alliant.

97.     As a direct and proximate result of Kaufman's conduct in material breach of his fiduciary duties and/or duties of loyalty owed to Lockton, Plaintiffs have suffered and will continue to suffer substantial damage and irreparable harm.

27

98. Kaufman's actions in breach of his fiduciary duties and/or duties of loyalty owed to Plaintiffs and resulting in substantial damage and irreparable harm to Plaintiffs were taken maliciously and were the result of Kaufman's willful misconduct.

**COUNT IV**
**MISAPPROPRIATION OF TRADE SECRETS (VIOLATIONS OF THE MISSOURI UNIFORM TRADE SECRETS ACT (MO. REV. STAT. § 417.450 *ET SEQ.*) AND DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 *ET SEQ.*))**

99. Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

100. Lockton's Confidential Information, "includes, without limitation, trade secrets, non-public proprietary information, formulas, patterns, compilations, programs, devices, methods, techniques, or processes; sales and other business methods or policies; prices or price formulas; procedures; the identity of and information concerning former or current Customer Accounts of the Series, the Other Series and/or any Affiliate, including but not limited to Customer Account needs and preferences, levels of satisfaction and the terms of engagement and transactions between the Series, the Other Series or Affiliates and/or its or their Customer Accounts; revenues, expenses, budgeting, finances and other financial information; computer systems, programs and software . . .; business, marketing and development strategies and plans; the Series; Other Series and Affiliate member and/or Lockton Entity personnel information, including without limitation, compensation and benefit information; internal operational information related to the structure of any of the Lockton Entities, including without limitation, the Operating Agreement[.]" Exhibit A, § 4.1(b); Exhibit B, § 4.1(b); Exhibit C, § 4.1(b).

101. Lockton's Confidential Information has actual and potential economic value and is subject to efforts by Lockton to keep such information confidential and secret.

102. For example, Lockton possesses Confidential Information about its Customer

28

Accounts' insurance needs and preferences, risk appetite, pricing and coverage requirements, present premiums, deductibles, collateral levels, commission arrangements, renewal dates, loss history, levels of satisfaction, and other information that would be greatly beneficial to competitors in soliciting such Customer Accounts. This information has independent economic value, is not generally available to competitors, and is protected by Lockton as a trade secret.

103.    Lockton's Confidential Information constitutes trade secrets.

104.    Lockton employs reasonable measures to ensure that its Confidential Information remains secret, including by entering into agreements that obligate those with access to ensure that its Confidential Information is protected.

105.    In his capacity as Producer Member of Lockton, Kaufman has access to Confidential Information from Lockton.

106.    Lockton's confidential and proprietary information is given to Kaufman pursuant to express agreements that the secrecy of the information will be maintained and that the information is to be kept confidential.

107.    On information and belief, Kaufman knowingly, and with an evil motive or reckless indifference to the rights of Plaintiffs, misappropriated Lockton's Confidential Information in recent weeks, despite planning to depart Lockton, in order to use such Confidential Information on behalf of Alliant.

108.    On information and belief, Kaufman is using, or intends to use, this Confidential Information to solicit business from Lockton's current and prospective Customer Accounts and to solicit Lockton's Producer Members and employees to depart Lockton and join or do business with Alliant, without Lockton's consent.

109.    Kaufman's misappropriation of Lockton's Confidential Information has caused

and, unless enjoined, will continue to cause damages and irreparable harm to Plaintiffs.

## COUNT V
## DECLARATORY JUDGMENT

110.    Plaintiffs incorporate by reference all allegations contained in the preceding Paragraphs as though set forth fully herein.

111.    Kaufman has effectively taken the position that California law and public policy prevent Plaintiffs from enforcing the choice of law, forum, notice of termination, and non-solicitation provisions of the Member Agreements and Operating Agreements.

112.    Specifically, Kaufman has taken the position that because Kaufman worked and lived in California, he "is entitled to the protections of California law" regarding "workplace mobility." Kaufman denied enforceability of the choice of law and forum provisions, by invoking California law, stating that he will "comply with his lawful obligations to Lockton in accordance with California law" but not Missouri law, and initiating action against Plaintiffs in California rather than Missouri. Kaufman also denied enforceability of the 30 days' notice requirement, stating the "purported requirement that Mr. Kaufman provide Lockton with thirty (30) days' advance notice of his department from Lockton violates Section 16600 and California's longstanding public policy in favor of workplace mobility," and Kaufman asserted that, "[i]n accordance with California law and public policy, … July 18 was Mr. Kaufman's last day with Lockton, not August 17 as stated in your July 18 email to Mr. Kaufman." Kaufman likewise denied enforceability of the non-solicitation provisions, stating "[t]he Member Agreements contain void and unenforceable non-competition covenants." Kaufman has also refused, despite requests from Plaintiffs, to acknowledge that these provisions are lawful and enforceable and, to the contrary, has rejected the legal basis for Plaintiffs' positions that they are, indeed, lawful and enforceable.

113. There exists an actual, justiciable controversy between Plaintiffs and Kaufman relating to their legal rights, duties, and obligations under the Member Agreements and Operating Agreements that is ripe for adjudication.

114. Declaratory relief will resolve the legal issues between the parties regarding the enforceability of the Member Agreements and Operating Agreements, including specifically the choice of law, forum, notice of termination, and non-solicitation provisions.

115. Plaintiff thus request a judgment declaring the rights and obligations of the parties under the Member Agreements and Operating Agreements and that the choice of law, forum, notice of termination and non-solicitation provisions contained therein are lawful and enforceable.

## REQUEST FOR JURY TRIAL

116. Plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

117. Wherefore, Plaintiffs pray for an order of this Court:

(a) Declaring that Kaufman has: (i) breached the Member Agreements and Operating Agreements; (ii) interfered with Plaintiffs' prospective economic advantage and prospective business relationships; (iii) breached fiduciary duties and/or duties of loyalty; and (iv) misappropriated Plaintiffs' trade secrets;

(b) Declaring the rights and obligations of the parties under the Member Agreements and Operating Agreements and that the choice of law, forum, notice of termination, and non-solicitation provisions contained therein are lawful and enforceable;

(c) Ordering that Kaufman pay to Plaintiffs all damages sustained by Plaintiffs arising from the foregoing misconduct;

(d) Ordering that Kaufman account to Plaintiffs for all gains, profits, and other

advantages unjustly obtained by Kaufman as a result of his wrongful acts;

(e)     Ordering that Kaufman account to Plaintiffs for a reasonable royalty for their misappropriation of trade secrets;

(f)     Ordering that Kaufman provide an accounting to Plaintiffs of any and all trade secrets and other confidential and proprietary information that have been used or disclosed to any person or entity;

(g)     Award exemplary damages as authorized by the Missouri Uniform Trade Secrets Act and/or the Defend Trade Secrets Act for the willful and malicious misappropriation of Plaintiffs' trade secrets;

(h)     Issue a temporary, preliminary, and permanent injunction: (i) enjoining Kaufman from joining Alliant or another competitor of Plaintiffs until the 30 days' notice period expires on or about August 17, 2022; (ii) enjoining Kaufman from directly or indirectly: (1) maintaining, possessing, using, disclosing, or providing to any third party Plaintiffs' Confidential Information; (2) using Plaintiffs' Confidential Information to solicit or render services to Customer Accounts; (3) using Plaintiffs' Confidential Information to solicit Plaintiffs' Producer Members or employees; (4) violating his duties to, and non-solicitation and related obligations and confidentiality agreements with, Plaintiffs; (5) soliciting, recruiting, hiring, inducing, persuading, or encouraging (or attempting to do same) any employee, Producer Member, or consultant of the Series, LIA, or any other Lockton series or affiliate to terminate his/her/its employment, membership, producer, or consultant relationship with, or to render services for any competitor of the Series, LIA, or any other Lockton series or affiliate, as applicable, while a Producer Member and for two years after any sale of his Producer Unit; (6) soliciting, inducing, persuading, or encouraging (or attempting to do same) any of the restricted Customer Accounts

described in the Member Agreements to reduce, terminate, or transfer to a competitor any products or services that are the same or substantially similar to, or directly competitive with, the products or services provided by the Series, LIA, or any other Lockton Series or affiliate, while a Producer Member and for two years after any sale of his Producer Unit; and (7) accepting, servicing, or working on any competitive business from any of the Customer Accounts that Kaufman may not solicit under the Member Agreements, or in any way doing business with any of the Customer Accounts that Kaufman may not solicit under the Member Agreements to the extent such business is the same or substantially similar to that provided by the Series, LIA or any other Lockton Series or affiliate, while a Producer Member and for two years after any sale of his Producer Unit; and (iii) ordering that Kaufman (1) account for all Plaintiffs' Confidential Information that Kaufman misappropriated; (2) return to Plaintiffs all of Plaintiffs' Confidential Information in Kaufman's possession, custody, and control; (3) certify in writing and under the pains of penalties of perjury, after returning Plaintiffs' Confidential Information, that all paper and electronic copies of all Plaintiffs' Confidential Information in his possession, custody, or control have been returned and, if electronic, upon resolution of these proceedings, have been permanently deleted from any location where they have been stored; (4) provide an accounting for any products, plans, services, contracts, or other materials that involve or rely on any of Plaintiffs' Confidential Information and for any business obtained by Kaufman as a consequence of his unlawful actions;

(i)     Award all of the costs and attorneys' fees Plaintiffs have incurred in connection with this action; and

(j)     Award such other and further relief as this Court deems just and proper.

Respectfully submitted,

BRYAN CAVE LEIGHTON PAISNER LLP


*/s/ Jennifer L. Berhorst*
Robert J. Hoffman MO #44486
Jennifer L. Berhorst MO #61784
1200 Main Street, Suite 3800
Kansas City, MO 64105
(816) 374-3203 (telephone)
(816) 374-3300 (facsimile)
rjhoffman@bclplaw.com
jennifer.berhorst@bclplaw.com

and

Michael B. Carlinsky (*pro hac* forthcoming)
Kimberly Carson (*pro hac* forthcoming)
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000 (telephone)
michaelcarlinsky@quinnemanuel.com
kimberlycarson@quinnemanuel.com

*Attorneys for Plaintiffs*